IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CASE No. 3:10-cr-00510-JO-03 |
| | ) | |
| v. | ) | FINDINGS OF FACT AND |
| | ) | CONCLUSIONS OF LAW |
| MOISES LOPEZ-PRADO | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

JONES, Judge:

## INTRODUCTION

Defendant, Moises Lopez-Prado, is charged with Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine and Cocaine, Distribution of Methamphetamine and Distribution of Cocaine. On July 24, 2012, defendant requested a hearing to determine whether he is mentally competent to stand trial in accordance with 18 U.S.C. § 4241(a). On August, 15, 2012, the government filed a motion for a further psychiatric examination of the defendant pursuant to 18 U.S.C. § 4247(b). This matter came on for hearing on January 23, 2013, to determined whether defendant is suffering from a mental disease or defect rendering him mentally incompetent, to the extent that he is unable to understand the nature and consequences of the proceedings against him, or to assist properly in his defense.

The defendant was examined by two psychologists, Dr. Lester Goldman of Portland, Oregon and Dr. Tiffany Brown, the examining Psychologist for the U.S. Department of Justice,

Federal Bureau of Prisons, at the Metropolitan Detention Center in Los Angeles, California. The examiners reached different conclusions. Dr. Goldman concluded that defendant was not competent to stand trial, did not understand any portion of the proceedings against him, and was mentally retarded to a degree that defendant was not competent to assist in his defense. In contrast, Dr. Brown found defendant, although mentally challenged, was competent to understand the nature of the charges against him and to assist in his defense, and found no basis for the Court to find him incompetent to stand trial. After reviewing all of the evidence submitted by the parties and conducting a hearing pursuant to 18 U.S.C. § 4247(d) to assess defendant's competency, I conclude that defendant, Moises Lopez-Prado, is competent to stand trial. My specific findings of fact and conclusions of law are set forth below.

## STANDARDS

The government bears the burden of demonstrating by a preponderance of the evidence that a defendant is competent to stand trial. *United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1991) (citing *United States v. Hutson*, 821 F.2d 1015, 1018 (5th Cir. 1987). A district court must base its assessment of a defendant's competency on findings of fact. *United States v. Lindley*, 774 F.2d 993 (9th Cir. 1985).

The test used to determine if a defendant is competent to stand trial is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960)(internal quotations and citation omitted). A defendant "is not competent to waive constitutional rights if mental illness has substantially impaired his or her ability to make a reasoned choice among alternatives presented and to understand the nature and consequences of the waiver." *Chavez v. United States*, 656 F.2d 512, 518 (9th Cir. 1981). It is not enough that a defendant is oriented in time and place and has some recollection of events. *Dusky*, 362 U.S. at 402. A district court "must assess a defendant's

competence with specific reference to the gravity of the decisions the defendant faces." *Chavez*, 656 F.2d at 518.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Mr. Lopez-Prado, age 37, was born and raised in Mexico. He did not attend school and is unable to read or write. While in Mexico, he worked in the fields until he was 20, when he decided to go to the United States where other members of his family had migrated. Although not married, he had an 11-year relationship with a woman and fathered five children with her. He has regular contact with his children who range in age from 4 to 11 and who live with their mother in Oregon. Upon arrival in the United States, defendant continued doing agricultural work, but then obtained employment at a Kentucky Fried Chicken restaurant for two years as a baker making biscuits and chicken. Following that, he began assisting at an auto body shop where he was employed at the time of his arrest, on July 7, 2011.

During his psychological evaluation, defendant revealed that he first tried alcohol at about age 18 and preferred to drink beer. When he would go to a party "in the afternoon...by 10:00 o'clock, I would stop. I must have had about 20 or 30. I used to drink more, but not anymore." He would "be drinking all day until I got drunk. But, recently, it seemed it was still pretty early when I figured it was time to get home." He admitted he had several arrests for Driving Under the Influence (DUI). Defendant denied any history of seizures, disorders, head injuries, or psychiatric or psychological problems.

Dr. Goldman evaluated defendant over the course of five to six hours and attempted to administer several tests. Dr. Goldman administered the Wechsler Adult Intelligence Scales, Third Edition (WAIS-III), which Dr. Brown described as outdated since the release of the fourth edition in 2008 and as inaccurate because the WAIS-III relied on English language ability that resulted in low scores for non-English speaking test takers. Dr. Goldman also attempted to administer the Competence Assessment for Standing Trial for Defendants with Mental Retardation (CAST-MR) to defendant, but could not complete the test because defendant seemingly did not understand the

format of the test or many of the words used in the test. Both doctors administered the Test of

Memory Malingering (TOMM) and defendant's scores fell in the range of malingering memory

deficits and raised questions whether defendant was putting forth his best effort on TOMM and all

other tests administered. Dr. Goldman noted that the TOMM, as applied to defendant, was

problematic because the norms for the TOMM do not include those for individuals with extremely

low intelligence. Goldman found that defendant put forth his best effort during the entire testing

process and concluded that defendant was mentally retarded, was unable to understand the nature

and consequences of the offense and was incompetent to stand trial.

Dr. Brown evaluated defendant over the course of sixteen hours and was able to observe

him interacting with other prisoners with whom he had no trouble communicating. In addition to

the TOMM, Dr. Brown's evaluation included the Minnesota Multiphasic Personality Inventory,

Second Edition (MMPI-2), and the Comprehensive Test of Nonverbal Intelligence, Second

Edition (CTONI-2). After performing the tests, Dr. Brown concluded that defendant was indeed

competent and did understand the nature and consequences of his offense and ability to assist in

his offense.

Dr. Brown noted "Mr. Lopez-Prado's demeanor was polite and cooperative. His mood

was within normal limits. His affect was consistent with the content of speech. He engaged in

appropriate reciprocal communication. His rate, volume, and tone of speech and speech

production were within normal limits. Speech was adequately enunciated, coherent, and goal

directed. None of the content was odd or bizarre. He was observed to appropriately conform his

behavior to comply with the institution's sanitation requirements. He followed directions,

maintained daily structured routines and was generally able to adapt to the demands of

incarceration. He was observed carrying on conversations with other inmates, interacting

appropriately." Dr. Brown further observed that although Lopez-Prado claimed to be forgetful, he

did not demonstrate memory problems when discussing his history or during the time of the

evaluation. Defendant was concrete in his thinking and Dr. Brown found that defendant had no

objective signs suggesting he was experiencing any auditory or visual hallucinations nor had he experienced hallucinations. She found no signs of formal thought disorder or psychosis, and that there was no evidence of delusions, loose association, confusion or confabulorations.

Dr. Brown did find that defendant fell in a very poor range of intellectual functioning and that the low scores were probably due in part to his failure to put forth adequate effort during the testing. She noted that the results of the tests would have placed defendant in the lowest one percent of the population. She observed that individuals who score in this extremely low range have difficulty completing daily tasks, such as grooming, eating, talking and socializing. Further, a person with these scores can usually be found in a residential care facility, as they are often unable to care for themselves or manage daily tasks. Defendant did not demonstrate any of these difficulties. In fact, he demonstrated the ability to properly care for himself, his grooming, hygiene and sanitation were appropriate and he interacted well with peers.

Furthermore, defendant's extensive work history is not consistent with an individual with such low testing results. He worked on a regular sustained basis as an adult. His shortest duration for employment was two years. He had jobs as sophisticated as repairing and remodeling automobiles and acting as a baker in restaurant. He had never been fired from any employment. Dr. Brown concluded that although certainly defendant may be slow, he seemed to have learned how to "dumb it down" or present himself as more impaired than he actually is when it may be beneficial to do so. During the portion of the evaluation with specific competency questions, although frequently concrete in his responses, defendant was able to follow the questioning and demonstrated the ability to learn new information. He clearly demonstrated an ability to understand the charges and the potential consequences.

Finally, defendant knew that he was being charged with drug violations. He understood what a conspiracy was when it was explained to him. He knew what the consequences for distributing the drugs would be. "I was told up to life, but ten years is what he told me." Ten years is the mandatory minimum for this offense of distributing substantial amounts of

methamphetamine.  I also note he and his companions had $54,000 in their possession at the time of the arrest.

After evaluating all the tests and the careful examinations by Dr. Goldman and Dr. Brown, I conclude that the government has proved defendant's competency by a preponderance of the evidence.   Defendant is competent to stand trial, fully understanding the nature of the charges against him and the consequences.  He has the ability to assist his counsel during the trial and understands the potential sentence he might receive.

Having found the defendant competent to stand trial, this case will be set for trial in sixty days.

DATED this 30 of January, 2013.

Hon. Robert E. Jones
Senior, U.S. District Judge

6 — FINDINGS