IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CASE No. 3:10-cr-00510-JO-3 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **MOISES LOPEZ-PRADO** ) | |
| ) | |
| Defendant. ) | |

**JONES, Judge:**

  Defendant, Moises Lopez-Prado ("Lopez-Prado"), filed a motion under 18 U.S.C. § 3582(c)(2) seeking a two-level reduction of his sentence based on United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") Amendment 782. The United States opposed this motion, arguing that under Amendment 782, Lopez-Prado's original sentence is lower than his amended Guidelines range and under the Sentencing Commission's policy statement U.S.S.G. § 1B1.10, not eligible for a reduction. For the reasons that follow, Lopez-Prado's motion is DENIED.

## STANDARD

### A. Sentence Reduction Under 18 U.S.C. § 3582

  "A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). Congress provided a narrow exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see also Dillon*, 560 U.S. at 825 (noting that "§ 3582(c)(2) does not authorize a sentencing or resentencing proceeding" but instead provides for the "'modif[ication of] a term of imprisonment' by giving courts the power to reduce an otherwise final sentence in circumstances specified by the Commission") (alteration

-1-OPINION & ORDER

in original). This authority to modify a previously-imposed prison sentence "represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines." *Dillon*, 560 U.S. at 828.

Congress gave the Sentencing Commission a "substantial role . . . with respect to sentence-modification proceedings." *Dillon*, 560 U.S. at 826. Congress charged the Sentencing Commission "both with deciding whether to amend the Guidelines, and with determining whether and to what extent an amendment will be retroactive." *Dillon*, 560 U.S. at 826 (citation omitted); *see also* 28 U.S.C. § 994(u) ("If the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."). Thus, courts are "constrained by the Commission's statements dictating 'by what amount' the sentence of a prisoner serving a term of imprisonment affected by the amendment 'may be reduced.'" *Dillon*, 560 U.S. at 826 (quoting 28 U.S.C. § 994(u)).

In § 3582(c), Congress specifically required that any sentence modification be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §§ 3582(c)(1)(A)(ii), 3582(c)(2); *see also Dillon*, 560 U.S. at 821 ("Any reduction [pursuant to § 3582(c)(2)] must be consistent with applicable policy statements issued by the Sentencing Commission."). The policy statement governing sentencing modifications after a retroactive amendment to the Guidelines instructs courts not to reduce a term of imprisonment if the amendment "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. Manual § 1B1.10(a)(2)(B).

In deciding a motion under § 3582(c)(2), a court must follow a two-step process. "At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction

authorized." *Dillon*, 560 U.S. at 827. This requires determining the amended guideline range, which is the range that would have been applicable to the defendant if the amendment had been in effect at the time of the defendant's original sentencing. *Dillon*, 560 U.S. at 827; *see also* § 1B1.10(b)(1). In making this determination, courts are to substitute only the new amendment "for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." § 1B1.10(b)(1); *see also Dillon*, 860 U.S. at 827.

The Sentencing Commission further limited application of a retroactive Guidelines amendment by instructing that a court cannot reduce a sentence "to a term that is less than the minimum of the amended guideline range determined under subdivision (1) of this subsection," with the exception of making a reduction that is comparable to what was made at the time of original sentencing as a result of "a government motion to reflect the defendant's substantial assistance to authorities . . . ."[1] § 1B1.10(b)(2); *see also Dillon*, 560 U.S. at 827 (discussing a previous version § 1B1.10(b)(2) that allowed a court to apply comparable departures and variances as were applied at the original sentencing and noting this instruction was "[c]onsistent with the limited nature of § 3582(c)(2) proceedings"). Step two of the § 3582(c) inquiry is to consider any applicable § 3553(a) factors and determine, in the discretion of the Court, whether any reduction authorized by the Guidelines amendment is warranted in whole or in part. *See Dillon*, 560 U.S. at 827; 18 U.S.C. § 3582(c)(1)(A).

"This circumscribed inquiry [under § 3582(c)(2)] is not to be treated as a 'plenary resentencing proceedings.'" *United States v. Navarro*, 800 F.3d 1104, 1110 (9th Cir. 2015) (quoting *Dillon*, 560 U.S. at 826). The appropriate use of sentence-modification under § 3582(c)(2) "'is to adjust a sentence in light of a Guidelines amendment,' so courts may not use such proceedings to 'reconsider [] a sentence based on factors unrelated to a retroactive

---

[1] Departures other than departures that reflect the defendant's substantial assistance to authorities are commonly referred to as "non-cooperation departures" in this district. *See e.g., United States v. Snyder*, No. 3:00-CR-00371-BR, 2016 WL 520953, at *8 (D. Or. 2016); *United States v. Guzman*, 3:12-cr-291-SI, at 22 (D. Or. 2015).

-3-OPINION & ORDER

Guidelines amendment.'" *Navarro*, 800 F.3d at 1110 (quoting *United States v. Fox*, 631 F.3d 1128, 1132 (9th Cir. 2011)).

## B. Equal Protection under the United States Constitution

"When the Commission enacts Guidelines treating one class of offenders differently from another, equal protection generally requires that the classification be 'rationally related to a legitimate government interest.'"[2] *Navarro*, 800 F.3d at 1113 (quoting *United States v. Ruiz-Chairez*, 493 F.3d 1089, 1091 (9th Cir. 2007)). If the classification implicates a fundamental right or a suspect classification, the Sentencing Commission's decision would be subject to a higher level of scrutiny. *Navarro*, 800 F.3d at 1113 n.7. Lopez-Prado argues that because his liberty is at stake, heightened scrutiny is appropriate. This argument, however, is foreclosed by the Ninth Circuit's decision in *Navarro*, which noted that rational-basis review is generally applied when the Guidelines treat classes of offenders differently and applied rational-basis review in considering constitutional challenges to § 1B1.10. *Navarro*, 800 F.3d at 1113. The Court is bound by this precedent.

A classification is rationally related to a legitimate government interest "if there is any *reasonably conceivable* state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) (emphasis added). Under rational-basis review, the burden is on the party seeking to disprove the rationality of the relationship between the classification and the purpose, and that party must "negative every conceivable basis which might support" the classification "whether or not the basis has a foundation in the record." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (quotation marks and citations omitted). Thus, courts are to accept generalizations regarding the rational basis, "even when there is an imperfect fit between means and ends" and even if the classification "is not made with mathematical nicety or

---

[2] As noted by the Ninth Circuit, the Guidelines technically are not governed by the Equal Protection Clause of the Fourteenth Amendment, which applies only to states, but the Due Process Clause of the Fifth Amendment "similarly prohibits unjustified discrimination by federal actors" and the "'approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment.'" *Navarro*, 800 F.3d at 1112 n.6 (quoting *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975)).

-4-OPINION & ORDER

because in practice it results in some inequality." *Heller*, 509 U.S. at 321 (quotation marks and citation omitted).

## BACKGROUND

On May 23, 2013, Lopez-Prado pled guilty to Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine and Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(a), (b)(1)(c), 21 U.S.C. § 846, and 18 U.S.C. § 2. Lopez-Prado's total offense level ("TOL") prior to departures, was 35 and his criminal history category was II, resulting in an advisory guideline range (before departures) of 188 to 235 months. The TOL of 35 was determined by a base-offense level of 36, a two-level enhancement for Lopez-Prado's role as organizer and a three-level reduction for his acceptance of responsibility. Pursuant to 18 U.S.C. § 3553(a), I considered Lopez-Prado's diminished mental capacity and granted him a four-level downward variance. I then imposed a sentence of 132 months of imprisonment.

## DISCUSSION

Lopez-Prado argues that in addition to the sentence modification under Amendment 782, he should continue to receive the benefit of the downward variance agreed upon in his plea agreement and applied by the court in his original sentencing. Lopez-Prado sets forth four arguments: (1) that the current interpretation of § 1B1.10(b)(2)(A) is in irreconcilable conflict with the statutory direction in 28 U.S.C. § 991(b)(1)(B) and 18 U.S.C. § 3553(a)(6); (2) that the limitation in § 1B1.10(b)(1) is inconsistent with the statutory direction in 28 U.S.C. § 991(b)(1)(B) and 18 U.S.C. § 3553(a)(6) because variances and departures are "guideline application decisions"; (3) that the United State's application of the current version of U.S.S.G. § 1B1.10(b)(2)(A) violates the Equal Protection Clause, and; (4) that under the doctrine of constitutional avoidance, the Court should interpret § 1B1.10 in a manner consistent with Lopez-Prado's interpretation.

### A. Whether the limitation in § 1B1.10(b)(2)(A) irreconcilably conflicts with the statutory direction in 28 U.S.C. § 991(b)(1)(B)

Lopez-Prado argues that § 1B1.10(b)(2) conflicts with the Sentencing Commission's statutory directive in 28 U.S.C. § 991(b), which states:

> (b) The purposes of the United States Sentencing Commission are to:
> (1) establish sentencing policies and practices for the Federal criminal justice system that:
> (A) *assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2)* of title 18, United States Code;
> (B) *provide certainty and fairness* in meeting the purposes of sentencing, *avoiding unwarranted sentencing disparities* among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to *permit individualized sentences* when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices; and
> (C) reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process.

28 U.S.C. § 991(b) (emphasis added). Lopez-Prado contends that by permitting courts to grant sentence reductions to people who did not receive variances and non-cooperation departures, but requiring them to deny reductions to people who received such variances and departures, § 1B1.10(b)(2) violates the goals set out in §§ 991(b)(1)(A) and (b)(1)(B) by nullifying the determinations previously made by the sentencing court and creating unwarranted disparities.

In *United States v. Tercero*, 734 F.3d 979 (9th Cir. 2013) the Ninth Circuit considered whether § 1B1.10, in particular its prohibition on consideration of variances and departures other than for substantial assistance, conflicted "with the purpose of the Guidelines...to bring about an effective, fair sentencing system, with honest, uniform and proportionate sentences." *Tercero*, 734 F.3d at 983. The Court found that "[a] motion brought under § 3582(c)(2) does not authorize a sentencing or resentencing proceeding. Instead, it provides for the modification of a term of imprisonment by giving courts the power to reduce an otherwise final sentence in circumstances specified by the Commission." *Tercero*, 734 F.3d at 983 (quotations omitted). The Court further considered the broad power of the Sentencing Commission to establish sentence modification limitations and the fact that at the original sentencing proceeding a defendant received the benefit

of considerations of all departures and variances. *Tercero*, 734 F.3d at 983. Based on these considerations, the Court concluded that it would be inappropriate for a court to reweigh the § 3553(a) factors in considering a sentence modification.

Based on the Court's ruling in Tercero, I find that the limitation in § 1B1.10(b)(2)(A) precluding consideration of variances and non-cooperation departures in the context of sentencing modification under 18 U.S.C. § 3582(c) does not conflict with 18 U.S.C. § 991(b).

## B. Whether Variances and Departures are "Guideline Application Decisions"

Lopez-Prado argues variances and departures are "guideline application decisions" and, pursuant to the instructions provided for in § 1B1.10(b)(1),[3] the Court "shall substitute" the amended guidelines range for the initial range "and shall leave all other guideline application decisions unaffected." He contends that the limitation in § 1B1.10(b)(2) undoes previous guideline applications and previous § 3553(a) determinations made by the original sentencing court. Further, that this prohibition of sentence modification for people who received variances or non-cooperation departures, violates § 991(b) and § 3553(a) by injecting disparity and unfairness into the sentence.

A "departure" is a divergence from the originally calculated sentence range based on specific Guidelines departure provision, whereas a "variance" is a divergence from the Guidelines range based on an exercise of the Court's discretion under § 3553(a). *See United States v. Fumo*, 655 F.3d 288, 317 (3d Cir. 2011), *as amended* (Sept. 15, 2011). The phrases "guideline application decision" and "amended guideline range," in isolation, may be ambiguous as to whether they include departures and variances. While not binding on the Court, the recent

---

[3] (b) Determination of Reduction in Term of Imprisonment.—
    (1) In General.—In determining whether, and to what extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced. In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.

decision in *United States v. Guzman,* 3:12-cr-291-SI (D. Or. 2015) determined that "guideline application decisions" are not included in the "applicable guideline range." *Guzman*, 3:12-cr-291-SI, at 18. Judge Simon reasoned that "if departures and variances were 'guideline application decisions,' they would necessarily be included in the amended 'applicable guideline range' (or 'amended guideline range'). *Guzman,* 3:12-cr-291-SI, at 18. Furthermore, "[w]hen considering the full text of § 1B1.10, its commentary, the text of its previous version, and applicable case law...it is evident that these phrases do not include variances and departures." *Guzman*, 3:12-cr-291-SI, at 11.

### 1. Text and context of current version of § 1B1.10

As noted by Judge Simon, if departures and variances were "guideline application decisions" that had to remain unaffected under § 1B1.10 and were therefore included in the "amended guideline range," then there would be no need to create the exception laid out in § 1B1.10(b)(2)(B) which allows a reduction below the "amended guideline range" based on substantial assistance. *Guzman,* 3:12-cr-291-SI, at 12. The clear discernment between "departures" and "guideline application decisions" is consistent with the Guidelines' definition of "departure"—an "imposition of a sentence outside the applicable range or of a sentence that is otherwise different from the guideline sentence." U.S.S.G. Manual § 1B1.10, Application Note 1(E).

#### a. Current version of § 1B1.10 commentary

The interpretation that departures and variances are not "guideline application decisions" is consistent with three Application Notes of the Guidelines' commentary. The Application Note to § 1B1.10(a) defines "applicable guideline range" as "the guideline range that ... is determined before consideration of any departure provision in the Guidelines Manual or a variance." U.S.S.G. Manual § 1B1.10, cmt. n. 1(A). Although this commentary defines the phrase for purpose of § 1B1.10(a), *Guzman* recognized that there is "no reasoning that would overcome the

-8-OPINION & ORDER

presumption that the same definition applies when determining the 'applicable' Guidelines range for purposes of § 1B1.10(b)." 3:12-cr-291-SI, at 13–14 (quotations omitted).

Similarly, Application Note of subsection (b)(2), which provides examples of how the amended guideline range is to be calculated, demonstrates that departures and variances are not "guideline application decisions" that are part of the "amended guideline range." U.S.S.G. Manual § 1B1.10, cmt. n. 3. "The example discussing original sentences that were 'outside the guideline range applicable to the defendant at the time of sentencing' because of downward departures or variances clarifies that such downward adjustments do not carry over into new the sentence that may be imposed pursuant to a retroactive Guidelines amendment." 3:12-cr-291-SI, at 14 (quoting U.S.S.G. Manual § 1B1.10, cmt. n. 3).

Finally, the commentary to Amendment 759, which enacted the 2011 amendments to § 1B1.10, explains that departures and variances are not included in the "applicable guideline range," which means they are not included in the "amended guideline range." Amendment 759 "amends Application Note 1 to clarify that the applicable guideline range referred to in § 1B1.10 is the guideline range determined pursuant to § 1B1.10(a), which is determined before consideration of *any* departure provision in the Guidelines Manual or *any* variance." U.S.S.G. Manual App'x C, Amend. 759, Reason for Amendment, at 421 (2011) (emphasis added).

The Guidelines commentary "is akin to an agency's interpretation of its own legislative rules" and if it "does not violate the Constitution or a federal statute, it must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Stinson v. United States*, 508 U.S. 36, 45 (1993) (quotations omitted). I agree with Judge Simon that the commentary's interpretation that "guideline application decisions" and "amended guideline range" do not include departures or variances.

### 2. Text and context of the previous version of § 1B1.10

The previous version of § 1B1.10 contained the same provisions instructing courts to leave "guideline application decisions" unaffected in § 1B1.10(b)(1) and foreclosing courts from reducing a sentence to a term less than the minimum of the "amended guideline range" in § 1B1.10(b)(2)(A). U.S.S.G. Manual § 1B1.10 (2010). But the previous version had different text in § 1B1.10(b)(2)(B), instructing that on modification, reductions comparable to original departures "*may*" be appropriate but that reductions comparable to original variances "generally would not be appropriate." U.S.S.G. Manual § 1B1.10(b)(2)(B) (2010) (emphasis added). It is this discretion previously awarded to the courts that demonstrates departures and variances are not "guideline application decisions." "If departures and variances were 'guideline application decisions' that were required to remain unaffected, then the court would have no need of the 'discretion' to apply departures and variances because they already would need to be included, and the discretion not to apply them would run afoul of the directive to leave 'guideline application decisions' unaffected." *Guzman*, 3:12-cr-291-SI, at 16. The fact that the current version of § 1B1.10(b)(2) removes the Court's discretion to consider variances and departures other than for substantial assistance does not convert departures and variances into "guideline application decisions" that are part of the "amended guideline range." *Guzman*, 3:12-cr-291-SI, at 16.

### 3. Case Law

The *Guzman* court relied on decisions from other circuits[4] that found, under the previous version of § 1B1.10, the original departures and variances are not required to be included when modifying a sentence under § 3582 (c)(2)—rather, the courts have discretion to decide whether a departure from the new sentencing range is warranted. *See United States v. Vautier*, 144 F.3d 756, 761 (11th Cir. 1998); *United States v. Wyatt*, 115 F.3d 606, 610 (8th Cir. 1997). Judge

---

[4] *See e.g., United States v. Hogan*, 722 F.3d 55, 60 (1st Cir. 2013); *United States v. Boyd*, 721 F.3d 1259, 1260–64 (10th Cir. 2013); *United States v. Montanez*, 717 F.3d 287, 292 (2d Cir. 2013); *United States v. Valdez*, 492 F. App'x 895, 899 (10th Cir. 2012).

Simon found this interpretation consistent with the current text of § 1B1.10. *Guzman*, 3:12-cr-291-SI, at 19. Additionally, the Ninth Circuit determined that departures and variances are not included in the "applicable guideline range." *See United States v. Pleasant*, 704 F.3d 808, 812 (9th Cir.), *cert. denied*, 134 S. Ct. 824 (2013) ("In short, Amendment 759 makes clear that the applicable guideline is derived pre-departure and pre-variance."). While not directly addressing the issue before the Court, the Ninth Circuit's conclusion that departures and variances are not included in the "applicable guideline range" forecloses the argument that they are "guideline application decisions" or that they should be included in the "amended guideline range."

By reviewing the text and commentary of the current version of § 1B1.10, the text of the previous version, other circuits' decisions on this matter, and by examining the Ninth Circuit's opinion on an analogous issue, I conclude that variances and departures are not guideline application decisions under § 1B1.10(b)(1).

### C. Whether the United State's application of the current version of U.S.S.G. § 1B1.10(b)(2)(A) violates the Equal Protection Clause

The previous version of § 1B1.10(b)(2) gave courts considering a sentence reduction the discretion to impose variances and departures comparable to those that were imposed during the original sentencing. U.S.S.G. Manual § 1B1.10(b)(2) (2010). The current version of § 1B1.10(b)(2) eliminates this discretion and prohibits a court from reducing sentences based on previously-imposed variances and non-cooperation departures. U.S.S.G. Manual § 1B1.10(b)(2) (2011). Lopez-Prado argues that the denial of sentence reductions to the class of defendants who previously received variances or non-cooperation departures violates the Equal Protection Clause. Specifically, Lopez-Prado asserts that prohibiting a reduction for people deemed to be deserving of lower, below-guideline sentences, but permitting a reduction for people deemed to require longer, within-guideline sentences, creates an irrational and arbitrary classification without sufficient justification.

### 1. Whether there is an irrational or arbitrary classification

Lopez-Prado argues that the classification created by § 1B1.10(b)(2) presents a concern of arbitrary classification in the following hypothetical: A drug conspiracy involving two codefendants, both with the same drug quantity level 36 and criminal history category III, with an adjustment for acceptance of responsibility. Defendant A received a 168-month sentence at the low end of the guideline range. Defendant B received a 135-month sentence, two levels below the guideline range because he suffered from diminished capacity.

Under Lopez-Prado's offered hypothetical, it is certainly possible that in some circumstances Defendant A, who previously received a more-stringent sentence, may be eligible for a sentence reduction while Defendant B, who received a less stringent sentence, may not benefit from the previously awarded variances and non-cooperation departures. However, the classification is not arbitrary just because it produces some inequality. *Heller*, 509 U.S. at 320. Rather, to demonstrate that the classification is irrational or arbitrary, Lopez-Prado must negate every conceivable basis which may support it. *Heller*, 509 U.S. at 320.

As noted in *Guzman*, "the application of a sentence reduction pursuant to a retroactive Guidelines amendment is discretionary." *Guzman*, 3:12-cr-291-SI, at 28–29. It is therefore possible that a judge considering a reduction for Defendant A would not apply the sentence reduction, believing the original longer sentence is sufficient but not greater than necessary to carry out the purposes of § 3553(a). If that were the case, then there would be no unwarranted disparity between Defendants A and B. As demonstrated, Lopez-Prado fails to set forth sufficient evidence that classification in § 1B1.10(b) rises to the level of an equal protection violation.

### 2. Whether the classification, if one exists, survives rational basis

Lopez-Prado argues that the Sentencing Commission did not provide any rationale sufficient to justify the disparate treatment of defendants who received variances and non-cooperation departures and those who did not. Lopez-Prado's burden is to negate "every

-12-OPINION & ORDER

conceivable basis which might support" the classification "whether or not the basis has a foundation in the record." *Heller*, 509 U.S. at 320 (quotation marks and citations omitted). In fact, under rational-basis review, decisions based on rational speculation, unsupported by evidence or empirical data, are sufficient, "regardless of whether [the policy statement] is an 'exact fit' for the interest at issue" or "is an imperfect fit between means and ends." *Navarro*, 800 F.3d at 1114. Furthermore, "a classification does not fail rational-basis review...because in practice it results in some inequality." *Aleman v. Glickman*, 217 F.3d 1191, 1201 (9th Cir. 2000).

The court in *Guzman*, faced with the same argument, looked to whether the defendants met the burden under rational-basis review to show that there is no reasonably conceivable set of facts that could provide a rational basis for the Sentencing Commission's classification for persons eligible for a sentence reduction. *Guzman*, 3:12-cr-291-SI, at 29. The court concluded that the Sentencing Commission's proffered reasons for the amendment to § 1B1.10(b)(2)(A), (1) reducing complexity, litigation, and disparities and promoting conformity; and (2) the concern relating to "windfall" sentences upon modification pass rational-basis muster.

As in *Guzman*, Lopez-Prado's argument that the revised version of the statute increases the likelihood of litigation by removing the judge's discretion to apply comparable variances and non-cooperation departures fails. "The Sentencing Commission's conclusion that eliminating variances and non-cooperation departures made sentencing modifications less complex and thereby would reduce litigation survives rational-bases review." *Guzman*, 3:12-cr-291-SI, at 31. Additionally, the objective of reducing disparity is also sufficient—"it was rational for the Sentencing Commission to be concerned that retroactive Guidelines amendments may not be imposed uniformly." *Guzman*, 3:12-cr-291-SI, at 31.

Under rational-basis review the challenged classification "must be upheld against equal protection challenge 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *United States v. Ellsworth*, 456 F.3d 1146, 1150 (9th Cir.

2006) (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)(emphasis in *Ellsworth*)). Lopez-Prado has not negated "every conceivable basis which might support" the Commission's decision prohibiting reductions below the amended guidelines range except in the case of substantial assistance nor has Lopez-Prado established there is not "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Ellsworth*, 456 F.3d at 1150. Therefore, I hold that the current version of U.S.S.G. § 1B1.10(b)(2)(A) as applied does not violate the Equal Protection Clause.

### D. Whether the Doctrine of Constitutional Avoidance Applies

Finally, Lopez-Prado contends the doctrine of constitutional avoidance mandates the Court to construe the language of the policy statement and its commentary to allow him a sentence reduction that keeps intact the variance he previously received. Failure to do so, Lopez-Prado argues, violates the Due Process Clause and the constitutionally-based retroactivity doctrine.

The doctrine of constitutional avoidance requires courts to adopt any "fairly possible" construction of a statute that avoids serious constitutional concerns. *Zadvydas v. Davis,* 533 U.S. 678, 689 (2001); *United States v. Buckland*, 289 F.3d 558, 564–65 (9th Cir. 2002) (en banc). As previously discussed, I do not find a constitutional violation and do not find, under rational-basis review, that serious questions arise regarding the constitutionality of § 1B1.10's prohibition on considering variances and non-cooperation departures. Thus, I decline to apply the doctrine of constitutional avoidance.

### CONCLUSION

Lopez-Prado's motion to reduce his sentence under 18 U.S.C. § 3582(c)(2) is DENIED.

**IT IS SO ORDERED.**

DATED this 24 day of March 2016.

Robert E. Jones
United States District Judge

-14-OPINION & ORDER